# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-1833
_____

Marvin Orlando Johnson

*Plaintiff - Appellant*

v.

Doctor Todd A. Leonard, Mend Correctional Care; Gwen Blossom, Medical Provider of Mend Correctional Care; Michelle Skroch, Nursing Director of Mend Correctional Care; Doctor John M. Collier, DDS, of Koala Dental, in their official and individual capacities

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis
_____

Submitted: March 13, 2019
Filed: July 3, 2019
_____

Before GRUENDER, BENTON, and GRASZ, Circuit Judges.
_____

BENTON, Circuit Judge.

As a pretrial detainee, Marvin Orlando Johnson suffered from multiple cavities and tooth pain. He sued Dr. Todd A. Leonard, Gwen Blossom, Michelle Skroch, and Dr. John M. Collier under 42 U.S.C. § 1983 for depriving him of dental care in

violation of the Eighth Amendment. Collier initially did not file a responsive pleading. The Clerk of the Court entered default against him. The district court[1] set the default aside, later granting summary judgment to the defendants. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

## I.

Johnson was a pretrial detainee from November 2014 to June 2016. The jail contracted with MEND Correctional Care for on-site medical care and coordination of dental services. The jail also contracted with Dr. Collier for dental care. If an inmate complained of dental problems, MEND protocol instructed its employees to look for signs of infection or other medical complications, prescribe medications as needed, and refer inmates to Collier if appropriate. Collier could see patients only if MEND placed them on his dental list. The jail required Collier to obtain authorization from the U.S. Marshals Service before providing certain services, including fillings and extractions.

On November 20, 2014, Johnson filed his first sick-call request complaining of tooth pain and difficulty eating and drinking. MEND examined him and gave him Dentek—a pain reliever for teeth—to use for 14 days. Two days later, he filed a sick-call request for pain. MEND told him to continue using Dentek as prescribed for the full 14 days. One week later, he complained again of pain. MEND forwarded his note to Collier. A few days later, Johnson filed a sick-call request for constant and horrible pain. MEND gave him Dentek and Ibuprofen, placing him on Collier's list. On December 6, Collier examined Johnson and put a temporary filling in tooth #13. Johnson complained at the end of December that the filling hurt and asked to see Collier. MEND gave him Dentek and Ibuprofen, but noted no bleeding, swelling,

---

[1]The Honorable Wilhelmina M. Wright, United States District Judge for the District of Minnesota.

drainage, or other signs of infection. On January 19, 2015, the Marshals Service approved a temporary filling or extraction.

Within two weeks, Collier put a temporary filling in tooth #2. Though the filling in tooth #13 was "still in and okay," Collier said he would submit a prior authorization request to the Marshals Service for a permanent filling. The Marshals Service approved the request on March 24. According to Johnson, Collier also said he would request to permanently fill tooth #2. MEND placed Johnson on the dental list again in late April after he complained of pain in his filling. Collier put a second temporary filling in a different spot in tooth #2 and extracted tooth #18. Johnson claims Collier said he would submit a prior authorization request for a permanent filling in tooth #15.

Johnson submitted three more sick requests in May and early June. He reported "10/10" pain. Finding no signs of infection, MEND gave him Dentek and Ibuprofen, placing him on the dental list. In mid-June, Collier put a temporary filling in tooth #30. Three days later, Johnson complained of moderate pain and difficulty eating and sleeping. MEND gave him Dentek and Ibuprofen. Johnson soon complained of pain again. MEND placed him on the dental list. Collier cleaned out and replaced the temporary filling in tooth #13 in July. According to Johnson, Collier said he had not received approval yet to permanently fill tooth #13. A little over a month later, Collier put a temporary filling in tooth #3. Johnson claims Collier said he would submit a request to permanently fill that tooth.

In early September, Johnson said part of tooth #2 broke in half. Later that month, he complained about pain and "how his dental work is not being approved." MEND prescribed Tylenol and referred him to Collier. Johnson refused treatment to extract tooth #2 in October, but continued to complain of pain the next month. MEND gave him Dentek while he waited to see Collier, but noted they would take no further action because he refused the extraction. Johnson made another sick-call

request at the end of December. MEND placed him on Collier's dental list, telling Johnson he could get Ibuprofen or Tylenol from the medication cart.

On January 9, 2016, Collier put a permanent filling in tooth #13. The same day, Johnson filed two sick-calls requesting permanent fillings in teeth #2, 3, 15, and 30. He filed a formal grievance two days later. The next day, MEND contacted Collier. He reported that these teeth did not require further treatment "until [Johnson] reaches his final destination." Johnson complained again about the same teeth. MEND examined him, placed him on the dental list, and gave him Dentek. After Collier saw him on January 23, Johnson filed several sick-call requests for pain. MEND relayed Johnson's concerns to Collier. He informed MEND that tooth #2 was completed, #15 had no cavity, and that he would request authorization to put permanent fillings in teeth #3 and #30. MEND noted on February 1 that it had seen a request for tooth #30 but not a request for tooth #3, despite its inquiries to Collier about his intent to submit requests for both teeth.

On February 6, Collier put a permanent filling in tooth #30. Johnson claims Collier also re-diagnosed him with cavities in several teeth and suggested a permanent filling for tooth #3. When Johnson soon complained about "excruciating" pain and swelling, MEND examined him (noting no swelling), gave him over-the-counter medications, and spoke to Collier about his concerns. Collier reported: teeth #13 and 30 were complete; he recommended extracting tooth #2, but Johnson refused; he indicated he would request approval for permanent fillings for teeth #3, 5, and 14. (Requests for #3, 5, and 14 are not in the record.) From late February to early March, Johnson made six more sick-call requests. MEND told him each time that it forwarded his concerns to Collier. On March 19, Collier put a filling in tooth #3 and replaced the temporary filling in tooth #2. He says tooth #3 was a permanent filling, but his notes from this visit are not in the record. In April, Johnson complained about teeth #5, 9, and 14. MEND examined him and forwarded his concerns to Collier, who treated Johnson on April 30. Collier claims he put permanent fillings in teeth #5 and 14 then, but his notes are not in the record.

-4-

In February 2016, Johnson sued Dr. Collier and three MEND providers under 42 U.S.C. § 1983 for acting with deliberate indifference to his cavities and tooth pain in violation of the Eighth Amendment. The complaint misspelled Collier's business as Koala Dental, instead of K.O.A.L.A. Dental Care II, LLC. When served, Collier told the Marshals Service of the spelling error. Collier claims he thought he would be re-served. He did not respond to the original complaint. The Clerk of the Court entered default against Collier. Learning of the entry of default from his insurance company, he sought counsel and filed a motion to set aside the entry of default. The magistrate judge recommended denying Collier's motion. Rejecting this recommendation, the district court set aside the entry of default.

MEND moved for summary judgment. Four months later, Collier moved for summary judgment. Adopting the magistrate judge's recommendations, the district court granted summary judgment to the MEND Defendants in August 2017, and to Collier in March 2018. Johnson appeals.

II.

Johnson argues that the district court erred in setting aside the entry of default against Collier. This court reviews the decision to set aside the entry of default for abuse of discretion. ***Stephenson v. El-Batrawi***, 524 F.3d 907, 912 (8th Cir. 2008). A court may set aside the entry of default under Fed. R. Civ. P. 55(c) for "good cause." To determine whether good cause exists, this court considers the: (1) blameworthiness or culpability of the defaulting party; (2) existence of a meritorious defense; and (3) prejudice to the other party by setting aside default. ***Johnson v. Dayton Elec. Mfg. Co.***, 140 F.3d 781, 784 (8th Cir. 1998). Setting aside default is often appropriate "for marginal failures when there [are] meritorious defenses and an absence of prejudice." ***Id.***

Collier claims he did not respond because he assumed Johnson would correct the misspelling in the complaint and re-serve him. Collier did not have litigation

experience. After initiating this suit, Johnson did not mention the litigation when Collier treated him. Collier immediately sought counsel when he learned about the suit from his insurance company. *See id.* ("[I]t is likely that a party who promptly attacks an entry of default, rather than waiting for grant of a default judgment, was guilty of an oversight and wishes to defend the case on the merits."). As the differences between the magistrate judge's recommendation and the district court's order indicate, there is a debatable issue here whether Collier was sloppy and careless or intentionally concocted a typo dispute as a bad faith means of escaping Johnson's lawsuit. Reviewing the record, this court cannot say that the district court's conclusion was so obviously wrong as to amount to an abuse of discretion.

Collier had a meritorious defense. Medical records and affidavits show Collier treated Johnson ten times, supporting his defense that he did not unreasonably delay or deny dental care. *See* **Stephenson**, 524 F.3d at 914 ("Whether a meritorious defense exists is determined by examining whether the proffered evidence would permit a finding for the defaulting party.").

Johnson was not significantly prejudiced by setting aside default. Prejudice requires a concrete harm, like "loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion." **Johnson**, 140 F.3d at 785. Proceeding to the merits would not require significant discovery because most of Johnson's medical records—including his visits with Collier—were produced in discovery with MEND. Being a pro se inmate did not prejudice Johnson—he continued to participate in the case throughout this time.

The district court did not abuse its discretion in setting aside the entry of default. *See* **Grant v. City of Blytheville**, 841 F.3d 767, 772–73 (8th Cir. 2016) (setting aside entry of default where there was no prejudice or "intentional effort to delay" and appellee had a meritorious defense); **Johnson**, 140 F.3d at 784 ("[W]e have often granted Rule 55(c) . . . relief for marginal failures when there were

meritorious defenses and an absence of prejudice."). *See also* **Oberstar v. FDIC**, 987 F.2d 494, 504 (8th Cir. 1993) (There is a "judicial preference for adjudication on the merits . . . .").

### III.

Johnson contends the district court erred in granting summary judgment to Collier and the MEND Defendants on his deliberate indifference claim. This court reviews de novo the grant of summary judgment, viewing the evidence most favorably to the nonmoving party. **Holden v. Hirner**, 663 F.3d 336, 340 (8th Cir. 2011). Once the MEND Defendants and Collier support their motion, Johnson "must proffer admissible evidence demonstrating a genuine dispute as to a material fact." *Id.* Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. **Fed. R. Civ. P. 56(a)**.

### A.

The MEND Defendants claim this court lacks jurisdiction over Johnson's claim against them because the notice of appeal does not list the August 2017 order granting them summary judgment. Johnson's notice appeals:

> the judgment of the U.S. District Court for the District of Minnesota that was entered on March 6, 2018 that: overruled plaintiff's objection(s), adopted the January 22, 2018 report and recommendation of United States Magistrate Judge Franklin L. Noel which recommended granting defendant Doctor John M. Collier, D.D.S.'s motion for summary judgment."

It is a jurisdictional requirement that a notice of appeal "designate the judgment, order, or part thereof being appealed." **Fed. R. App. P. 3(c)(1)(B)**; **Bosley v. Kearney R-1 Sch. Dist.**, 140 F.3d 776, 781 (8th Cir. 1998) (Rule 3's requirement "is more than a mere technicality, and . . . deficiencies therein may create a

-7-

jurisdictional bar to an appeal."). *See* **Rosillo v. Holten**, 817 F.3d 595, 597 (8th Cir. 2016) ("Where an appellant specifies one order of the district court in his notice of appeal, but fails to identify another, the notice is not sufficient to confer jurisdiction to review the unmentioned order."). This court "construe[s] the notice of appeal liberally and permit[s] review where the intent of the appeal is obvious and the adverse party incurs no prejudice." **Parkhill v. Minnesota Mut. Life Ins. Co.**, 286 F.3d 1051, 1058 (8th Cir. 2002). *See* **Greer v. St. Louis Reg'l Med. Ctr.**, 258 F.3d 843, 846 (8th Cir. 2001) ("We do not think that the rules specifying the contents of notices of appeal should be interpreted *strictissimi juris*, especially in dealing with pro se litigants, where the appellee shows no prejudice.").

Johnson's intent to appeal the order granting summary judgment to MEND is apparent. He appealed the judgment—not a specific order. *See* **Greer**, 258 F.3d at 846 ("Ordinarily, a notice of appeal that specifies the final judgment in a case should be understood to bring up for review all of the previous rulings and orders that led up to and served as a predicate for that final judgment."). The notice of appeal was sent to the MEND Defendants' attorney. The caption listed the MEND Defendants and Collier with the common case number from both district court orders. The MEND Defendants have not identified any prejudice from allowing Johnson's claim to proceed. Johnson's brief argued his claim against the MEND Defendants, and they fully addressed the merits of this claim in their brief. This court has jurisdiction over Johnson's claim against MEND. *See id.* (jurisdiction over unmentioned summary judgment orders where pro se appellant appealed judgment and appellee would not be prejudiced); **Reynolds v. Dormire**, 636 F.3d 976, 979 n.2 (8th Cir. 2011) (jurisdiction where appellant was pro se, appellees addressed both orders in their brief and did not show prejudice).

B.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted). As a pretrial detainee, Johnson is "entitled to at least as much protection under the Fourteenth Amendment as under the Eighth Amendment." *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). To prove his deliberate indifference claim, Johnson must show: "(1) he suffered from an objectively serious medical need, and (2) defendants knew of the need yet deliberately disregarded it." *Id.* "Deliberate indifference is more than negligence, more even than gross negligence . . . ." *Fourte v. Faulkner Cty.*, 746 F.3d 384, 387 (8th Cir. 2014). It "may be found where medical care is so inappropriate as to evidence intentional maltreatment." *Id. See Holden*, 663 F.3d at 343 ("The level of culpability required to demonstrate deliberate indifference on the part of prison officials is equal to criminal recklessness."). This is a "fact-intensive inquiry" that requires Johnson to "clear a substantial evidentiary threshold" to succeed on his claim. *Nelson v. Shuffman*, 603 F.3d 439, 448–49 (8th Cir. 2010). Assuming, without deciding, that Johnson suffered from a serious medical need, summary judgment is proper because Johnson has not shown that the MEND Defendants and Collier were deliberately indifferent.

According to the medical records, the MEND Defendants responded to Johnson's sick-calls, either replying with information about his treatment or seeing him in person. Following their dental protocol, they examined him, prescribed Dentek and other pain medications, and referred him to Collier when appropriate. Johnson argues, however, that they were deliberately indifferent because they refused to give him prescription pain medications for nine months and did not ensure the Marshals Service approved his dental procedures. Johnson's disagreement with their decision to offer him over-the-counter pain medications, rather than prescription medications, does not constitute deliberate indifference. *See id.* at 449 ("A prisoner's

-9-

mere difference of opinion over matters of expert medical judgment or a course of medical treatment fails to rise to the level of a constitutional violation."). The MEND Defendants did not ignore Johnson's complaints about Collier's treatment or the delays in prior authorization from the Marshals Service. Instead, they either placed Johnson on the dental list or contacted Collier with Johnson's concerns and asked about his treatment plan. Nothing in their treatment suggests intentional maltreatment or criminal recklessness. *See* **Fourte**, 746 F.3d at 387 (deliberate indifference may be found where medical care evidences intentional maltreatment); **Holden**, 663 F.3d at 343 (deliberate indifference is akin to criminal recklessness).

As to Collier, Johnson claims he was deliberately indifferent by waiting to place permanent fillings, particularly for tooth #13. He also argues summary judgment is not proper because the parties presented inconsistent narratives about the prior authorization requests. Collier diagnosed Johnson with a cavity in tooth #13 on December 6, 2014. He put in a temporary filling that day. After Johnson complained of ongoing pain, Collier cleaned the tooth and replaced the temporary filling. Johnson continued to complain of pain until Collier put a permanent filling in tooth #13 on January 9, 2016. Collier claims he did not do the permanent filling earlier because he did not receive approval from the Marshals Service. The Marshals Service approved a permanent filling for tooth #13 on March 24, 2015. Collier says he never received the approval. The MEND Defendants, however, contend that they immediately placed the approval form in Collier's file.

A delay in treating a serious medical need can constitute deliberate indifference. *See, e.g.,* **Dadd v. Anoka Cty.**, 827 F.3d 749, 755 (8th Cir. 2016) ("Delay in the provision of treatment or in providing examinations can violate inmates' rights when the inmates' ailments are medically serious or painful in nature."). Many cases finding deliberate indifference due to a delay in dental care involve almost a complete lack of treatment leading to an infection or worsening condition. *See* **Hartsfield**, 371 F.3d at 457 (question of material fact whether medical

staff were deliberately indifferent for waiting six weeks to arrange for dental treatment even though inmate suffered from pain and infection); **Boyd v. Knox**, 47 F.3d 966, 969 (8th Cir. 1995) (denying summary judgment for three-week delay referring to oral surgeon where doctor knew of inmate's pain and his "mouth was so swollen he could barely open it" and "pus regularly oozed from the infection"); **Patterson v. Pearson**, 19 F.3d 439, 440 (8th Cir. 1994) (one-month delay treating infection that required extraction could constitute deliberate indifference). Collier, however, did not ignore Johnson's complaints of pain. He saw Johnson every time MEND placed him on his dental list, treating him ten times over seventeen months. He performed dental exams, cleanings, x-rays, a tooth extraction, temporary fillings, and permanent fillings. As to tooth #13, he checked the filling when Johnson complained of pain and put in two temporary fillings before permanently filling the tooth in early 2016.

The parties' inconsistent narratives about the prior authorization requests and reason for the delay in tooth #13 does not preclude summary judgment. A genuine issue of material fact exists only when "there is a dispute about a fact material to the outcome of the case, and the dispute is genuine in that a reasonable jury could return a verdict for either party." **Jones v. Minnesota Dep't of Corrs.**, 512 F.3d 478, 481 (8th Cir. 2008). Determining whether Collier received approval earlier or submitted other requests would not change the outcome of the case. Even if Collier did see the approval for tooth #13 in March 2015 and did wait to put in the permanent filling, he did not deliberately disregard Johnson's medical needs because he consistently provided adequate treatment before putting in permanent fillings.

In his affidavit, Collier stated that temporary fillings have "a lengthy history of lasting up to 20 years" and are "a perfectly reasonable dental treatment, even for a long period of time." Johnson did not present evidence showing that temporary fillings—rather than permanent fillings—deviate from the professional standards of care or are unreasonable. See **Dulany v. Carnahan**, 132 F.3d 1234, 1240 (8th Cir.

-11-

1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment."); *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990) (inmate can show deliberate indifference by establishing course of treatment "deviated from professional standards"). He claims that Collier's failure to follow his own prescribed course of treatment for permanent fillings rebuts the affidavit and shows deliberate indifference. *See Smith*, 919 F.2d at 93 ("[A] doctor's decision to take an easier and less efficacious course of treatment" can constitute deliberate indifference.); *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) ("Although the doctor did not completely ignore plaintiff's pain, a doctor's choice of the easier and less efficacious treatment for an objectively serious medical condition can still amount to deliberate indifference . . . ." (citation omitted)). That Collier would have put in permanent fillings earlier does not create a genuine dispute of material fact about the adequacy of temporary fillings and their history of lasting twenty years. *Cf. Dulany*, 132 F.3d at 1242 ("A medical expert opinion that it is 'very unclear' whether treatment was adequate is simply insufficient to create a question of fact as to deliberate indifference."); *McCarthy v. Place*, 313 Fed. Appx. 810, 816 (6th Cir. 2008) (reasonable jury could find dentist deliberately indifferent for providing pain medication instead of temporarily filling cavity).

Any delay in permanently filling Johnson's cavities does not show an "unnecessary and wanton infliction of pain" that is "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 105–06. Collier provided consistent, adequate treatment responding to Johnson's complaints. He was not deliberately indifferent. *See Farmer v. Brennan*, 511 U.S. 825, 844 (1994) ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."); *Nelson*, 603 F.3d at 449 ("A prisoner's mere difference of opinion over matters of expert medical judgment or a course of

-12-

medical treatment fails to rise to the level of a constitutional violation."); *Dulany*, 132 F.3d at 1241 ("The existence of a possible alternate course of treatment, which may or may not have been successful, is not sufficient to raise an inference of deliberate indifference where the prison officials acted reasonably but ultimately failed to avert the harm." (citation omitted)); *Logan v. Clarke*, 119 F.3d 647, 650 (8th Cir. 1997) ("Although the prison doctors may not have proceeded . . . as quickly as hindsight perhaps allows us to think they should have, their actions were not deliberately indifferent. The doctors made efforts to cure the problem in a reasonable and sensible manner.").

Because Johnson has failed to meet the substantial evidentiary threshold required to show the MEND Defendants and Collier were deliberately indifferent, summary judgment is proper.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____